## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AARON WALTERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>PENTAIR PLC, JOHN L. STAUCH, and NICHOLAS J. BRAZIS,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Aaron Walters ("Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Pentair plc ("Pentair" or the "Company") with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Pentair; and (c) review of other publicly available information concerning Pentair.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that purchased or otherwise acquired Pentair securities between April 28, 2026 and July 14, 2026, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Pentair provides various water solutions, such as filtration, water supply pumps, and fluid treatment products. It has three reportable segments: Flow, Water Solutions, and Pool. The Pool segment designs, manufactures and sells energy-efficient pool equipment and accessories. In fiscal 2025, the Pool segment accounted for about 37% of net sales and 46% of reportable income.

3.      On July 14, 2026, after the market closed, Pentair released its preliminary second quarter 2026 financial results, disclosing that "the [C]ompany estimates that the *destocking of inventory in the Pool channel negatively impacted Pool segment sales by approximately $170*

1

*million and Pool segment income by approximately $105 million.*"[1] As a result, second quarter 2026 sales were expected to be "down 17 percent versus the prior guide of approximately 1 percent" and full year 2026 "[s]ales are expected to be down approximately 4 percent to 7 percent versus prior guide of up 2 percent to 4 percent[.]" The Company also announced the departure of its Chief Financial Officer, effective immediately.

4.    On this news, Pentair's stock price fell $11.35, or 15%, to close at $64.33 per share on July 15, 2026, on unusually heavy trading volume.

5.    Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there was significant destocking of inventory in the Pool channel; (2) that, as a result, the Company's sales and operating income were adversely affected; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

6.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.    The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

---

[1] Unless otherwise stated, all emphasis in bold and italics hereinafter is added, and all footnotes are omitted.

2

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

9.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)). Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.

10.     In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## PARTIES

11.     Plaintiff Aaron Walters, as set forth in the accompanying certification, incorporated by reference herein, purchased Pentair securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

12.     Defendant Pentair is incorporated under the laws of Ireland with its principal executive offices located in London, United Kingdom. Pentair's ordinary shares trade on the New York Stock Exchange ("NYSE") exchange under the symbol "PNR."

13.     Defendant John L. Stauch ("Stauch") was the Company's Chief Executive Officer ("CEO") at all relevant times.

14.     Defendant Nicholas J. Brazis ("Brazis") was the Company's Chief Financial Officer ("CFO") at all relevant times.

15.     Defendants Stauch and Brazis (together, the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, i.e., the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     Pentair provides various water solutions, such as filtration, water supply pumps, and fluid treatment products. It has three reportable segments: Flow, Water Solutions, and Pool. The Pool segment designs, manufactures and sells energy-efficient pool equipment and accessories. In fiscal 2025, the Pool segment accounted for about 37% of net sales and 46% of reportable income.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on April 28, 2026. On that day, Pentair announced first quarter 2026 financial results, including that "*[s]ales of $1,037 million, [were] up 3 percent compared to sales for the same period last year*" and "*[o]perating income was $210 million with*

4

*ROS of 20.3 percent, an increase of 20 basis points compared to the prior year period.*"

Specifically, the Company issued a press release which stated as follows, in relevant part:

- *Sales of $1,037 million, up 3 percent compared to sales for the same period last year*

- *Operating income was $210 million with ROS of 20.3 percent, an increase of 20 basis points compared to the prior year period; on an adjusted basis, ROS expanded 100 basis points to 25.0 percent*

- GAAP EPS increased 5 percent to $0.98 when compared to the prior year period and adjusted EPS rose 10 percent to $1.22

- Repurchased $200 million of ordinary shares

- The company updated its full year 2026 GAAP EPS guidance to approximately $4.83 to $4.93, up 23 percent to 25 percent versus the prior year, and updated EPS guidance on an adjusted basis to approximately $5.30 to $5.40, up 8 percent to 10 percent versus the prior year

    *       *       *

Mr. Stauch concluded, ***"Our full year outlook reflects a strong first quarter and cautious optimism as we head into our most important quarter seasonally. Our sales growth forecast assumes limited to no U.S. residential recovery and continued expansion across our commercial, industrial and municipal verticals.*** We feel confident that we expect to control what we can and continue to mitigate risk. ***We also introduced second quarter guidance reflecting sales growth, margin expansion and EPS growth.*** As a leader in helping the world move, improve and enjoy water, life's most essential resource, we are well positioned to capture opportunities from favorable secular trends in water and we continue to invest to drive long-term sales and earnings growth."

The Company updated its estimated 2026 GAAP EPS from continuing operations to approximately $4.83 to $4.93, up 23 percent to 25 percent versus the prior year, and updated estimated EPS on an adjusted basis to approximately $5.30 to $5.40, up 8 percent to 10 percent versus the prior year. The Company updated its estimated full year 2026 sales to be up approximately 2 to 4 percent on a reported basis.

In addition, the Company introduces estimated second quarter 2026 GAAP EPS from continuing operations guidance of approximately $1.39 to $1.42, up approximately 54 percent to 58 percent compared to the prior year period, and adjusted EPS of approximately $1.47 to $1.50, up approximately 6 percent to 8 percent compared to the prior year period. The Company expects second quarter sales to be up approximately 1 percent on a reported basis compared to the second quarter of 2025.

18.    On April 28, 2026, the Company submitted its quarterly report for the period ended March 31, 2026 on a Form 10-Q filed with the SEC, affirming the previously reported financial results and further stating the following regarding the Company's inventory, in relevant part:

| In millions, except per-share data | | March 31, 2026 | December 31, 2025 |
|---|---|---|---|
| **Assets** | | | |
| **Current assets** | | | |
| Cash and cash equivalents | $ | 67.7 $ | 101.6 |
| Accounts receivable, net of allowances of $6.0 and $6.8, respectively | | 913.7 | 673.2 |
| Inventories | | 642.0 | 632.6 |
| Other current assets | | 139.6 | 134.4 |
| Total current assets | | 1,763.0 | 1,541.8 |
| **Property, plant and equipment, net** | | 377.1 | 376.8 |
| **Other assets** | | | |
| Goodwill | | 3,524.7 | 3,538.1 |
| Intangibles, net | | 1,056.1 | 1,073.3 |
| Other non-current assets | | 351.1 | 338.8 |
| Total other assets | | 4,931.9 | 4,950.2 |
| **Total assets** | $ | 7,072.0 $ | 6,868.8 |

19.    The above statements identified in ¶¶17-18 were materially false and/or misleading, and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors: (1) that there was significant destocking of inventory in the Pool channel; (2) that, as a result, the Company's sales and operating income were adversely affected; and (3) that, as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

20.    On July 14, 2026, after the market closed, Pentair released preliminary second quarter 2026 financial results, disclosing among other things, that "the [C]ompany estimates that the *destocking of inventory in the Pool channel negatively impacted Pool segment sales by approximately $170 million and Pool segment income by approximately $105 million.*" The Company also announced the departure of its Chief Financial Officer, effective immediately. Specifically, the Company issued a press released which stated as follows, in relevant part:

6

**Pentair Announces Chief Financial Officer Transition and Provides Preliminary Second Quarter 2026 Financial Results, Revises Full Year 2026 Guidance, and Schedules Second Quarter 2026 Investor Call**

LONDON, United Kingdom — July 14, 2026 — Pentair plc (NYSE: PNR), a leader in helping the world sustainably move, improve and enjoy water, life's most essential resource, announced today that it has initiated a search to identify its next Chief Financial Officer ("CFO") and that Bob Fishman, Pentair's former Executive Vice President and CFO, has been appointed Interim Executive Vice President and CFO, effective immediately. Fishman's appointment follows Nicholas Brazis' departure from the company on July 10, 2026, to pursue another opportunity at a private company. The company also announced today preliminary financial results for the second quarter of 2026 and provided revised guidance for full year 2026.

*         *         *

*Preliminary Second Quarter 2026 Results:*

•Sales are expected to be approximately $930 million, down 17 percent versus previous guide of up approximately 1 percent primarily due to the adverse impact of Pool channel inventory

•Operating income from continuing operations is expected to be approximately $165 million; Adjusted Operating Income is expected to be approximately $235 million as the result of the adverse impact of Pool channel inventory and the positive impact of recoveries of tariffs previously collected under the International Emergency Economic Powers Act ("IEEPA")

•Earnings per diluted share from continuing operations ("EPS") are expected to be approximately $0.80 versus previous guidance of $1.39 to $1.42; Adjusted EPS is expected to be approximately $1.12 versus previous guide of $1.47 to $1.50 as the result of the adverse impact of Pool channel inventory and the positive impact of IEEPA refunds

•The company estimates that the destocking of inventory in the Pool channel negatively impacted Pool segment sales by approximately $170 million and Pool segment income by approximately $105 million

•The company's results are expected to include approximately $35 million of IEEPA refunds

*Revised Full Year 2026 Guidance:*

•***Sales are expected to be down approximately 4 percent to 7 percent versus previous guide of up 2 percent to 4 percent mostly attributable to destocking of inventory in the Pool channel and right sizing of channel inventory in preparation for the 2027 pool season***

7

•Operating income from continuing operations is expected to be down approximately 1 percent to 6 percent; Adjusted Operating Income is expected to be down approximately 5 percent to 9 percent as the result of the adverse impact of Pool channel inventory and the positive impact of IEEPA refunds

•GAAP EPS is expected to be approximately $3.90 to $4.10 versus the previous guide of $4.83 to $4.93; Adjusted EPS is expected to be approximately $4.60 to $4.80 versus previous guide of $5.30 to $5.40 as a result of the adverse impact of Pool channel inventory and the positive impact of IEEPA refunds

•The company's net income from continuing operations for the year is expected to be approximately $635 million to $670 million; EBITDA for the year is expected to be approximately $1,050 million

•***The company estimates that the destocking of inventory in the Pool channel negatively impacts Pool segment sales by approximately $250 million and Pool segment income by approximately $155 million***

21.     On this news, Pentair's stock price fell $11.35, or 15%, to close at $64.33 per share on July 15, 2026, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

22.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Pentair securities between April 28, 2026 and July 14, 2026, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

23.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Pentair's shares actively traded on the NYSE.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of Pentair shares were traded publicly during the Class

8

Period on the NYSE. Record owners and other members of the Class may be identified from records maintained by Pentair or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

24. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

25. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

26. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Pentair; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

27. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**UNDISCLOSED ADVERSE FACTS**

28.    The market for Pentair's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Pentair's securities traded at artificially inflated prices during the Class Period. Plaintiff and other members of the Class purchased or otherwise acquired Pentair's securities relying upon the integrity of the market price of the Company's securities and market information relating to Pentair, and have been damaged thereby.

29.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Pentair's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Pentair's business, operations, and prospects as alleged herein.

30.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pentair's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

31.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

32.     During the Class Period, Plaintiff and the Class purchased Pentair's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

33.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Pentair, their control over, and/or receipt and/or modification of Pentair's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Pentair, participated in the fraudulent scheme alleged herein.

**APPLICABILITY OF PRESUMPTION OF RELIANCE**
**(FRAUD-ON-THE-MARKET DOCTRINE)**

34.     The market for Pentair's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Pentair's securities traded at artificially inflated prices during the Class Period.  On April

11

28, 2026, the Company's share price closed at a Class Period high of $82.86 per share. Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Pentair's securities and market information relating to Pentair, and have been damaged thereby.

35.    During the Class Period, the artificial inflation of Pentair's shares was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Pentair's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Pentair and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

36.    At all relevant times, the market for Pentair's securities was an efficient market for the following reasons, among others:

(a)    Pentair shares met the requirements for listing, and was listed and actively traded on the NYSE, a highly efficient and automated market;

(b)    As a regulated issuer, Pentair filed periodic public reports with the SEC and/or the NYSE;

(c)    Pentair regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on

12

the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Pentair was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

37.    As a result of the foregoing, the market for Pentair's securities promptly digested current information regarding Pentair from all publicly available sources and reflected such information in Pentair's share price. Under these circumstances, all purchasers of Pentair's securities during the Class Period suffered similar injury through their purchase of Pentair's securities at artificially inflated prices and a presumption of reliance applies.

38.    A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

39.    The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint.

The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Pentair who knew that the statement was false when made.

## FIRST CLAIM

### Violation of Section 10(b) of The Exchange Act and

### Rule 10b-5 Promulgated Thereunder

### Against All Defendants

40. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

41. During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Pentair's securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

14

42.    Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Pentair's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

43.    Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Pentair's financial well-being and prospects, as specified herein.

44.    Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Pentair's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Pentair and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

45.    Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management

15

team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

46.    Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Pentair's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

47.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Pentair's securities was artificially inflated during the Class Period. In ignorance of the fact that

16

market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Pentair's securities during the Class Period at artificially high prices and were damaged thereby.

48.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Pentair was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Pentair securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

49.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

50.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

### Violation of Section 20(a) of The Exchange Act

### Against the Individual Defendants

51.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

17

52.     Individual Defendants acted as controlling persons of Pentair within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

54.     As set forth above, Pentair and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

18

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

<u>**JURY TRIAL DEMANDED**</u>

Plaintiff hereby demands a trial by jury.

Dated:  August 3, 2026                         **GLANCY PRONGAY WOLKE & ROTTER LLP**

By: */s/ Rebecca Dawson*
Rebecca Dawson
745 5th Avenue, 5th Floor
New York, NY 10151
Telephone: (213) 521-8007
Facsimile: (212) 884-0988
Email:  rdawson@glancylaw.com

Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
clinehan@glancylaw.com

*Counsel for Plaintiff Aaron Walters*

19

## SWORN CERTIFICATION OF PLAINTIFF
## PENTAIR PLC (PNR) SECURITIES LITIGATION

I, Aaron Walters, certify that:

1. I have reviewed the Complaint, adopt its allegations, and authorize its filing and/or the filing of a lead plaintiff motion on my behalf.

2. I did not purchase the Pentair plc securities that are the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under the federal securities laws.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Pentair plc securities during the period set forth in the Complaint are as follows:

   (See attached transactions)

5. I have not sought to serve, nor served, as a representative party on behalf of a class in any action under the federal securities laws (15 U.S. Code, Chapter 2B; and 15 U.S. Code, Chapter 2A, Subchapter I) during the last three years.

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

8/3/2026
_____
Date

_____
Aaron Walters

**Aaron Walters' Transactions in Pentair plc (PNR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 6/29/2026 | Bought | 8 | $76.20 |
| 7/14/2026 | Bought | 2 | $76.50 |